1 THOMAS W. FERRELL, ESQ. (Bar No. 115605)
ferrellt@higgslaw.com
2 GEOFFREY M. THORNE, ESQ. (Bar No. 284740)
thorneg@higgslaw.com
3 HIGGS FLETCHER & MACK LLP
401 West "A" Street, Suite 2600
4 San Diego, CA 92101-7913
TEL: 619.236.1551
5 FAX: 619.696.1410

6 Attorneys for Plaintiff
EDMOND PETRUS, individually and as Trustee of the
7 PETRUS FAMILY IRREVOCABLE TRUST DTD
05/01/1991
8

9 **UNITED STATES DISTRICT COURT**

10 **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 11 EDMOND PETRUS, individually and as Trustee of the PETRUS FAMILY IRREVOCABLE TRUST DTD 05/01/1991, <br><br> Plaintiffs, <br><br> v. <br><br> NEW YORK LIFE INSURANCE COMPANY, a New York corporation, and TIMOTHY R. CORBETT, an individual, and DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO. **'14CV2268 BAS JMA** <br><br> **COMPLAINT FOR** <br><br> **1. BREACH OF LIFE INSURANCE CONTRACT,** <br><br> **2. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** <br><br> **3. BREACH OF FIDUCIARY DUTY,** <br><br> **4. NEGLIGENCE,** <br><br> **5. INTENTIONAL MISREPRESENTATION, and** <br><br> **6. FOR AN ACCOUNTING** |

24 <u>**SUMMARY**</u>

25     1.    Plaintiff Edmond Petrus ("Mr. Petrus") sues New York Life Insurance

26 Company ("New York Life") and Timothy R. Corbett ("Mr. Corbett") for failure to

27 pay death benefits under a life insurance policy when they became due upon the

28

death of Mr. Petrus' mother in July, 2012.  New York Life breached the insurance

contract in failing to pay the full death benefit that was due.  In addition,  New York

Life and Mr. Corbett owed a fiduciary's duty of care to Mr. Petrus which they

breached in advising him about the life insurance benefits and in their handling of

premiums, dividends and additional death benefits that accrued to the insurance

policy because of the premiums paid to New York Life over many years.  Further,

the defendants have acted willfully in a manner to expose themselves to damages

for making knowing misrepresentations and for tortious breach of the covenant of

good faith and fair dealing in their handling of Mr. Petrus' claims for the full death

benefits due under the insurance policy.

## THE PARTIES

2.      Plaintiff, Mr. Petrus, has his principal place of residence  in San Diego,

California.  He is the sole beneficiary and the Trustee of the Petrus Family

Irrevocable Trust DTD 05/01/1991.

3.      Defendant New York Life is a corporation organized under the laws of

the State of New York.  It conducts business in San Diego County, including the

life insurance business at issue in this Complaint.  Based upon information and

belief, New York Life has in force at this moment, life insurance and other

insurance products, insuring San Diego County residents and for which those

residents pay money to New York Life to keep in force.  New York Life's principal

place of business is 51 Madison Avenue, New York, NY 10010.

4.      Defendant Timothy R. Corbett is a citizen and resident of the State of

Illinois.  Mr. Petrus alleges upon information and belief that at the relevant times,

Mr. Corbett was and remains an employee and sales agent for New York Life, with

his with his principal place of business at 520 Lake Cook Road, Suite 600,

Deerfield, IL 60015-5927.  Mr. Corbett held himself out as an employee of New

York life, empowered by New York Life to act as its lawful agent concerning the

life insurance policy at the center of this lawsuit.

1

## JURISDICTION AND VENUE

2       5.     This Court has jurisdiction over the parties' dispute pursuant to

3 provisions of 28 U.S.C. §1332 because there is complete diversity of citizenship

4 between Plaintiff and Defendants and the amount in controversy exceeds $75,000

5 exclusive of interest and costs.

6       6.     Venue is proper in this Court because Plaintiff is a citizen and resident

7 of San Diego County and a significant number of the events giving rise to this

8 claim occurred in communications among the parties, originating from or received

9 in San Diego County.

10

## FACTS COMMON TO ALL CLAIMS

11       7.     In 1991 Mr. Petrus' parents, Mary Jean Petrus and Edmond A. Petrus

12 purchased New York Life Insurance Company policy, No. 38 240 143. The policy

13 went into force on May 12, 1991. A true and correct copy of what New York Life

14 represented on February 7, 2013 to be a "duplicate copy" if the policy, less the

15 application, is attached to this Complaint and incorporated here by this reference.

16 The policy provided two forms of life insurance. One form was called

17 "Survivorship Whole Life Insurance" At policy inception, it provided a death

18 benefit of one million dollars. The other type of insurance in the policy was called

19 Dividend Optional Term Life Insurance ("DOT insurance" *for short*) originally in

20 the amount of a second $1 million dollars. Both Mary and Edmond were insured

21 and the insurance was a so-called "second to die" policy which obligated New York

22 Life to pay the policy benefit only upon Mary's death if she survived Edmond and

23 was the second to die. That is what happened. Mary, the second to die, passed

24 away in July 2012.

25       8.     The insurance policy named the Petrus Family Trust as the beneficiary

26 entitled to receive the death benefit. Mary and Edmond purchased the insurance

27 policy as part of their estate planning and when Mary died, the plaintiff, Mr. Petrus

28 was the sole beneficiary of the trust.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No.

1        9.     From policy inception throughout the relevant time, all premiums

2   required to maintain the policy in force and all conditions precedent to New York

3   Life's performance under the insurance contract were maintained and performed.

4        10.    From time to time after the policy was sold to Mary and Edmond

5   Petrus, agents and employees of New York Life contacted them and contacted

6   Trustees managing the Trust for periodic discussions about the insurance policy and

7   to discuss whether the policy continued to be the appropriate type and amount of

8   insurance for the trust to own.

9        11.    During some time in 2005, New York Life assigned Mr. Corbett as the

10  New York Life employee/agent with responsibility for periodically contacting the

11  policyholder(s) or the Trustee to discuss the insurance policy.

12       12.    During some time in 2005, Mr. Corbett began the first of several

13  contacts with the then current Trustee of the Trust to discuss the New York Life

14  policy and its role in Mary Petrus' estate planning. By that time, her husband,

15  Edmond Petrus, had already passed away and the policy,  by its nature, remained in

16  force (assuming New York Life continued to be paid) with the understanding that

17  no death benefit were due until Mary's eventual passing.

18       13.    Beginning in 2005, Mr. Corbett provided oral and written advice and

19  recommendations about the insurance policy in contacts with the administrators of

20  the Petrus Family Trust, notably Mr. Petrus.

21       14.    The insurance policy stated that 17 years after the policy went into

22  force, the premium for the policy would grow larger, as Mary and Edmond grew

23  older.  For this insurance policy, that increase would take effect on May 12, 2007,

24  which was the start of the 18th year of the insurance policy.  The annual premium

25  for the Survivorship Whole Life insurance I was to increase from $29,300 to

26  $58,920 per year.

27       15.    During 2005 and 2006, Mr. Petrus had several contacts with Mr.

28  Corbett concerning the life insurance and the scheduled increase in the annual

premises.  Mr. Petrus had not been informed by Mr. Corbett or New York Life and was not unaware in 2005-2006 that New York Life charged a separate premium for the DOT insurance.  The DOT insurance premiums also increased at specified milestones, but those were much lower than the premiums for the Survivorship Whole Life part of the policy and the DOT insurance premiums  increased at a much lower and slower pace.  For example, the premium for the DOT insurance in 2005 was below $15,000 per year and was the least expensive and most cost effective life insurance owned by the Trust.   Mr. Petrus only learned after his mother's death in 2012 that even with the scheduled increases in the premiums for the DOT insurance, it would remain the least expensive and most cost effective life insurance on his mother's life that was owned by the Trust.

16.    In the time period of approximately January 2005 through December 2008,  Mr. Corbett provided information, advice and recommendations to Mr. Petrus, including statements of existing fact,  which included but were not limited to the following:

a)    That the DOT insurance was the cause of the increase in premiums for the New York Life policy;

b)    That if the DOT death benefit were surrendered, the annual premium for the insurance policy would not increase,  it would revert to zero.

c)    That Mr. Petrus should try to achieve an average cost of $32,000 to $34,000 for each $1,000,000 of life insurance on his mother's life;

d)    That Mr. Petrus should cancel/surrender the New York Life DOT insurance;

e)    That he should cancel or surrender another life insurance policy on his mother's life that had been issued by Mutual of Omaha Insurance Company;

f)    That Mr. Petrus could replace the cancelled insurance with $3,000,000 of new life insurance issued by New York Life and sold by

1    Mr. Corbett that would achieve the cost averaging target Mr. Corbett had

2    recommended.

3    17.    Mr. Petrus relied upon Mr. Corbett's advice and recommendations and

4    in 2006 submitted an application for $3,000,000 of New York Life insurance on his

5    mother's life.  However, for medical reasons the New York Life insurance policy

6    was more expensive than other life insurance policies thaw old provide the same

7    death benefit and was not and was not purchased from New York Life.

8    18.    Sometime in 2008, Mr. Petrus successfully obtained a commitment

9    from a competitor of New York Life that would issue life insurance on his mother's

10   life.  He took steps to surrender the New York Life DOT insurance, as had been

11   recommended by Mr. Corbett in 2006.  That death benefit was replaced by life

12   insurance from another insurance company.

13   19.    Mr. Petrus made his decision to surrender the New York Life DOT

14   insurance based upon the advice and recommendation that Mr. Corbett provided.

15   Mr. Petrus did not receive any advice or recommendations from any other insurance

16   company or insurance agent at any time about the advisability of surrendering the

17   DOT insurance.  He only received the advice and recommendation to surrender the

18   DOT insurance from Mr. Corbett.

19   20.    As a result, upon Mary Petrus' death in 2012, New York Life paid

20   only the Survivorship Whole Life death benefit to the beneficiary  and did not pay

21   the death benefit provided by the DOT insurance.  New York life issued a check on

22   August 3, 2012 to the beneficiary in the amount of $1,293,102.48, not the $2

23   million Mary and Edmond purchased in 1991.  If Mr. Petrus had not acted in 2008

24   in reliance on Mr. Corbett's advice and recommendation to drop the DOT

25   insurance,  (1) New York Life would have owed approximately $710,000 more

26   than it paid to the beneficiary, and (2) the annual premium for that insurance would

27   not have exceeded $19,500 per year up to the date of Mary's death, below Mr.

28   Corbett's recommendation to pay up to $34,000 for each one million dollars of life

insurance.  Even if the DOT insurance premium rose as high as $20,000 per year, which it would not,  the DOT insurance would still be the least expensive and most cost effective life insurance owned by the trust on the date of Mary's death.  Look at that fact from New York Life's perspective and one starts to understand the Mr. Corbett and New York Life's reason for giving Mr. Petrus the advice to cancel the DOT insurance and the Mutual of Omaha insurance and to replace it with $3 million of newly issued New York Life insurance policies.  If Mr. Corbett and New York Life had not persuaded Mr. Petrus to drop the DOT insurance,  New York Life would have collected a low premium for 6 more years but would have owed an additional $700,000+ to the Petrus Family Trust on Mary's death.  Mr. Petrus also alleges on information and belief that Mr. Corbett would stand to earn a much larger commission if he persuaded Mr. Petrus to purchase $3 million of new New York Life insurance than he would have if Mr. Petrus had kept the DOT insurance which was a policy that Mr. Corbett did not sell, in an account that he inherited from another New York Life agent.

22.    In early 2008, the Trust instructed New York Life and asked for confirmation that premiums due on the insurance policy were to be paid exclusively from earned dividends and only if there is a shortage of dividends, to be paid by liquidating paid-up additions to the Survivor Whole Life Insurance product.

23. After Mary Petrus' death in July 2012, Plaintiff requested that New York Life provide an accounting all premiums paid for the insurance (from whatever source) and all dividends earned on the policies.

24.    Based upon information and belief, the premium and dividend history, reveal that New York Life did not follow instructions given to it specifying that only dividends should be used to pay premiums and that only if there is a shortage of dividends were paid-up additions to the Survivorship Whole Life insurance to be liquidated to pay premiums.  As a result, paid-up additions which had made the Survivorship Whole Life insurance death benefit grow to more than $1,300,000

1  shrink so that at the time of Mary's death, New York Life paid a smaller death

2  benefit because some of the policy limits had been liquidated to provide money to

3  pay the annual premiums.

4        25.    From no later than 2005 to the present, New York Life and

5  Mr. Corbett have held a position of trust for advice and service they provided to Mr.

6  Petrus involving the New York Life policy. New York Life owed a fiduciary duty

7  to Mr. Petrus to act in a reasonable and prudent manner concerning the advice

8  provided and concerning the handling of premiums and dividends in connection

9  with the insurance policy. Mr. Corbett owed a fiduciary duty to Mr. Petrus to act in

10  a reasonable and prudent manner concerning the advice provided and concerning

11  the handling of premiums and dividends in connection with the insurance policy.

12  Defendants breached the duties that they owed Plaintiff by:

13              a)    Advising Plaintiff to cancel or surrender the DOT insurance

14  when it was the least expensive and most cost-effective life insurance in the

15  entire insurance portfolio and was not in his interest to do so but was in Mr.

16  Corbett's and New York Life's interests for him to do so because they

17  wanted him to buy new life insurance from New York Life that would pay

18  more money to New York Life relative to the death benefit than the DOT

19  insurance was paid to New York Life;

20              b)    Failing to follow instructions that policy premiums be paid from

21  dividends earned in the policy and only as a last resort by liquidating paid-up

22  additions in the Survivorship Whole Life insurance;

23              c)    Advising Plaintiff that if the DOT insurance were surrendered,

24  then the premium for the insurance policy would drop to zero;

25              d)    Failing to advise Plaintiff that New York Life was charging

26  premium and crediting itself for premium for the DOT insurance, separate

27  and apart from paying itself the premium for the Survivorship Whole Life

28  insurance from dividends earned in that policy;

1              e)     Failing to maintain records of the communications and advice

2      created by and provided by Mr. Corbett to the Plaintiff and others concerning

3      the New York Life insurance policy.

4      26.    During 2014, Mr. Petrus, provided information to New York Life

5  demonstrating that New York Life owed the death benefit provided by the DOT

6  insurance which New York Life did not pay when it paid Mary's dearth benefit on

7  August 3, 2012.

8      27.    During the six months preceding the filing of this Complaint,

9  Mr. Petrus requested copies of all documents, materials and correspondence

10  contained in the New York Life files and Mr. Corbett's files concerning the New

11  York Life Insurance policy.  On June 12, 2014, an agent of New York Life

12  transmitted documents represented to be responsive to the request.  On June 26,

13  2014, New York Life transmitted additional documents in response to a renewed

14  request that New York Life deliver all documents, such as emails, letters or

15  illustrations of benefits and costs that had not previously been sent.

16      28.    During a conference call with Mr. Petrus in August, 2014, the New

17  York Life employee who transmitted the New York Life and Corbett documents

18  responded to a question asked by Mr. Petrus' by stating that New York Life had

19  delivered all of the documents that either it or Mr. Corbett had in their possession

20  concerning the New York Life policy.

21      29.    Mr. Petrus has records of material communications with and from New

22  York Life that that were not included in the documents produced by New York

23  Life.  Therefore, Mr. Petrus alleges on information and belief that Mr. Corbett

24  and/or other individuals involved in the handling of the New York Life policy have

25  destroyed or hidden important records (1) concerning advice and recommendations

26  made to Mr. Petrus and (2) suggesting advice and recommendations that should

27  have been given and made, but were not.

28  ///

30.     Mr. Petrus caused a "Proof of Claim" or "Proof of Loss" to be submitted to New York Life on September 11, 2014. New York Life has not responded.

31.     At no time from 2005 to the present has New York Life given Mr. Petrus notice of any applicable statute of limitations or deadline for taking action against New York Life on any of the concerns raised in this Complaint. Mr. Petrus took steps to secure a tolling agreement from Mr. Corbett and New York Life providing that the parties exclude 60 days from the calculation of any statute of limitations that existed, unexpired, as of June 3, 2014 that would affect any potential claim against New York Life and Mr. Corbett. Before July 1, 2014, New York Life reopened its analysis and consideration of Mr. Petrus' claim for death benefits under the New York Life policy. New York Life requested and (on August 26, 2014) received additional documentary evidence from Mr. Petrus regarding payment of the death benefit in August 2014. On August 25, 2015, New York Life received oral information directly from Mr. Petrus during its renewed investigation into the claim for the New York Life insurance death benefit. On September 8, 2014, New York Life's lawful agent and employee issued this response on behalf of New York Life and Mr. Corbett, "I've discussed these documents with Agent Corbett. Nothing set forth in these documents changes our view of the situation."

32.     Mr. Petrus interpreted the September 8, 2014 response to be an indication that New York Life would deny or was denying the claim for the death benefits. He caused a letter to be written to New York Life on September 11, 2014 submitting a formal request for payment and asking for a response. There has been no response. Since New York Life will not respond to or even acknowledge receipt of the proof of claim and request for payment submitted on September 11th, Mr. Petrus has been forced to incur legal fees and litigation costs to pursue this lawsuit to obtain the benefits owed by New York Life under the insurance policy.

## FIRST CLAIM FOR RELIEF

### (Breach of Life Insurance Contract)

### Against all Defendants

33.    Plaintiff realleges and incorporates paragraphs 1 through 32 as though fully set forth here.

34.    Plaintiff, as the Trustee of the Petrus Family Trust and the sole beneficiary of the Trust that was entitled to receive the New York Life death benefit, had a contractual relationship with Defendants by virtue of the written obligations imposed on Defendants by the policy.

35.    Plaintiff, and the insureds, performed each obligation, condition and covenant required of them under the policy.  Namely, all premium payments due under the policy were timely paid from the inception of the policy through 2012 when Mary passed away.  Those that were not paid were excused from payment by virtue of the conduct of the defendants set forth in this Complaint.

36.    Defendants had a duty to perform each obligation, condition and covenant required of them under the policy, but failed to do so.

37.    Defendants breached the insurance policy by remitting partial payment of $1,293,102.48 to Plaintiff rather than the full $2 million due under the policy.

38.    As a direct and proximate result of Defendants' breach, Plaintiff has suffered actual monetary damages of at least $706,896.52, plus interest at the maximum legal rate, as well as reasonable fees and costs paid to prosecute the claims asserted herein.

## SECOND CLAIM FOR RELIEF

### (Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing)

### Against all Defendants

39.    Plaintiff realleges and incorporates paragraphs 1 through 32 and 34-38 as though fully set forth here.

///

HIGGS FLETCHER & MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No.

1      40.    Plaintiff, as the Trustee of the Petrus Family Trust and the sole

2  beneficiary of the Trust that was entitled to receive the New York Life death

3  benefit, had a contractual relationship with Defendants by virtue of the written

4  obligations imposed on Defendants by the policy.

5      41.    Plaintiff, and the insureds, performed each obligation, condition and

6  covenant required of them under the policy.  Namely, all premium payments due

7  under the policy were timely paid from the inception of the policy through 2012

8  when Mary passed away.

9      42.    Defendants had a duty to perform each obligation, condition and

10  covenant required of them under the policy, including a duty to pay insurance

11  benefits.

12      43.    Plaintiff was the intended beneficiary of the proceeds of the insurance

13  policy, and was entitled to receive the full benefits conferred by the policy

14  following the passing of Mary Jean Petrus—the second to die.  In particular,

15  Plaintiff should have received a $2 million death benefit as called for by the policy

16  rather than $1,293,102.48.

17      44.    Plaintiff submitted to New York Life a "Proof of Claim" or "Proof of

18  Loss" on September 11, 2014 requesting payment of the unpaid balance of the DOT

19  death benefit.  New York Life has not responded.

20      45.    New York Life has a contractual obligation to pay Plaintiff the

21  remaining $706,896.52 due under the DOT insurance.  Defendant New York Life's

22  actions and conduct in evaluating its duty to pay policy benefits, maintaining

23  records relevant to the policy and in failing to pay the policy benefits fell below the

24  standard of care imposed upon an insurance company having such duties in the

25  ways set forth in this complaint.

26      46.    As a direct and proximate result of Defendants' breach, Plaintiff has

27  suffered actual monetary damages of at least $706,896.52, plus interest at the

28  maximum legal rate, as well as reasonable fees and costs paid to prosecute the

1    claims asserted herein.

## THIRD CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

### Against all Defendants

5    47.    Plaintiff realleges and incorporates paragraphs 1 through 32, 34-38 and

6    40-46 as though fully set forth here.

7    48.    Plaintiff, as the Trustee of the Petrus Family Trust and the sole

8    beneficiary of the Trust that was entitled to receive the New York Life death

9    benefit, stood in a fiduciary relationship with Defendants, who were the insurance

10   company issuing and agent servicing the policy.

11   49.    Defendants had a fiduciary duty to use reasonable care in connection

12   to providing advice to Plaintiff about life insurance benefits and the payment of

13   premiums, dividends and additional death benefits that accrued over the course of

14   the policy, as well as a duty to act as a reasonably careful insurance broker and/or

15   agent would have acted under the same or similar circumstances.

16   50.    Defendants breached their duty by:

17          a)     advising Plaintiff to cancel or surrender the DOT insurance

18   notwithstanding that it was the cheapest and most cost-effective life insurance in

19   the entire insurance portfolio and knowing that doing so would cause Plaintiff to

20   forfeit the death benefits conferred by the DOT insurance;

21          b)     advising Plaintiff to cancel or surrender the Mutual of Omaha

22   Insurance Company policy;

23          c)     disobeying the direct instruction given by Plaintiff that the

24   policy premiums only be paid from dividends earned in the policy rather than

25   liquidated paid-up additions from the Survivorship Whole Life insurance,

26   unless doing so was absolutely necessary;

27          d)     representing to Plaintiff that if he surrendered the DOT

28   insurance, the premium for the insurance policy would drop to zero;

1    e)    not informing Plaintiff that New York Life was charging

2    premium and crediting itself for premium for the DOT insurance, separate

3    and apart from paying itself the premium for the Survivorship Whole Life

4    insurance from dividends earned in that policy; and,

5    f)    Failing to maintain a complete record of the communications

6    and advice created by and provided by Mr. Corbett to the Plaintiff and others

7    concerning the New York Life insurance policy.

8    51.    As a direct and proximate result of Defendants' breach, Plaintiff has

9    suffered actual monetary damages of at least $706,896.52, plus interest at the

10    maximum legal rate, as well as additional damages that will be proven at trial.

11    52.    Defendants engaged in a practice of deceit and suppression of facts

12    known to Defendants, all with the intention of causing harm to Plaintiff and were

13    oppressive, fraudulent, and malicious conduct as defined in California Civil Code §

14    3294.  Plaintiff should recover, in addition to actual damages, exemplary and

15    punitive damages according to proof.

16    **FOURTH CLAIM FOR RELIEF**

17    **(Negligence)**

18    **Against all Defendants**

19    53.    Plaintiff realleges and incorporates paragraphs 1 through 32, 34-38 and

20    40-46 and 48-52 as though fully set forth here.

21    54.    Defendants owed a duty of care to Plaintiff, and the insureds, in that

22    they were the insurance company issuing and the agent servicing the policy for the

23    benefit of the Plaintiff, and therefore owed a duty to exercise reasonable care at all

24    times on for his benefit in connection to providing insurance advice and services.

25    55.    Defendants breached their duty by:

26    a)    advising Plaintiff to cancel or surrender the DOT insurance

27    notwithstanding that it was the cheapest and most cost-effective life

28    insurance in the entire insurance portfolio and knowing that doing so would

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

14

Case No.

1     cause Plaintiff to forfeit the death benefits conferred by the DOT insurance;

2           b)     advising Plaintiff to cancel or surrender the Mutual of Omaha

3     Insurance Company policy;

4           c)     disobeying the direct instruction given by Plaintiff that the

5     policy premiums only be paid from dividends earned in the policy rather than

6     liquidated paid-up additions from the Survivorship Whole Life insurance,

7     unless doing so was absolutely necessary;

8           d)     representing to Plaintiff that if he surrendered the DOT

9     insurance, the premium for the insurance policy would drop to zero;

10           e)     not informing Plaintiff that New York Life was charging

11     premium and crediting itself for premium for the DOT insurance, separate

12     and apart from paying itself the premium for the Survivorship Whole Life

13     insurance from dividends earned in that policy; and,

14           f)     Failing to maintain a complete record of the communications

15     and advice created by and provided by Mr. Corbett to the Plaintiff and others

16     concerning the New York Life insurance policy.

17     56.     As a direct and proximate result of Defendants' breach, Plaintiff has

18 suffered actual monetary damages of at least $706,896.52, plus interest at the

19 maximum legal rate, as well as additional damages that will be proven at trial.

20                   **FIFTH CLAIM FOR RELIEF**

21                  **(Intentional Misrepresentation)**

22                    **Against all Defendants**

23     57.     Plaintiff realleges and incorporates paragraphs 1 through 32, 34-38 and

24 40-46, 48-52 and 54-56 as though fully set forth here.

25     58.     Defendants represented to Plaintiff that the following material

26 statements were true:

27           a)     That the DOT insurance was the cause of the increase in

28     premiums for the New York Life policy;

b)      That if the DOT death benefit were surrendered, the annual premium for the insurance policy would not increase, it would revert to zero.

c)      That Mr. Petrus should try to achieve an average cost of $32,000 to $34,000 for each $1,000,000 of life insurance on his mother's life;

d)      That he should cancel or surrender another life insurance policy on his mother's life that had been issued by Mutual of Omaha Insurance Company;

e)      That Mr. Corbett could replace the cancelled insurance with $3,000,000 of new life insurance issued by New York Life and sold by Mr. Corbett that would achieve the cost averaging target Mr. Corbett had recommended.

f)      That it was in Mr. Petrus best interest to cancel or surrender the DOT insurance.

59.     Defendants' representations were false.

60.     Defendants knew each representation was false when the statement was made; or, alternatively, made the representation recklessly and without regard for its truth.

61.     Defendants intended Plaintiff to rely on the representations so that: (*a*) New York Life would not have to pay an additional $706,896.52 to Plaintiff following Mary's death because it would have only collected a very low premium (less than $20,000 annually) for six years; and (*b*) Mr. Corbett would receive a larger commission if the policy were canceled and new insurance sold on Mary's life.

62.     Plaintiff reasonably trusted Defendants and surrendered the DOT insurance as well as the policy issued by Mutual of Omaha Insurance Company.

63.     As a direct and proximate result of Defendants' intentional misrepresentations, Plaintiff has suffered actual monetary damages of at least $706,896.52, plus interest at the maximum legal rate, as well as additional damages

1   that will be proven at trial.

2        64.    Defendants engaged in a practice of deceit and suppression of facts

3   known to Defendants, all with the intention of causing harm to Plaintiff and were

4   oppressive, fraudulent, and malicious conduct as defined in California Civil Code §

5   3294.  Plaintiff should recover, in addition to actual damages, exemplary and

6   punitive damages according to proof.

7                                **SIXTH CLAIM FOR RELIEF**

8                              **(Demand for Accounting)**

9                              **Against New York Life**

10       63.    Plaintiff realleges and incorporates paragraphs 1 through 32, 34-38 and

11  40-46, 48-52, 54-56 and 58-64 as though fully set forth here.

12       64.    In 2008, New York Life was instructed to pay the premiums due on

13  the policy exclusively with funds from earned dividends; if no such dividends were

14  available, then to liquidate paid-up additions to the Survivor Whole Life Insurance

15  product.

16       65.    Plaintiff is informed and believes and thereon alleges that New York

17  Life did not did not pay the policy premiums per the specific instruction.  Rather,

18  Plaintiff is informed and believes that New York Life used paid-up additions to the

19  Survivor Whole Life Insurance product to pay the premium and, as a result,

20  decreased the total amount of the death benefit due and payable to Plaintiff.

21       66.    Plaintiff requested that New York Life provide an accounting of all

22  premiums paid for the insurance—regardless of the source of the payment—as well

23  as all dividends earned on the policy.  New York Life has not complied with this

24  request.

25       67.    Plaintiff therefore requests an accounting illustrating all of the sources

26  of money used to pay premiums, all premiums paid for the insurance, all dividends

27  earned and the treatment of all paid up additions under the insurance policy.

28  ///

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

### **FIRST CAUSE OF ACTION**

1.    For general damages for breach of contract;

2.    For special damages for breach of contract;

3.    For costs and pre-judgment interest according to proof;

4.    For such other relief as the Court deems just and proper.

### **SECOND CAUSE OF ACTION**

6.    For general damages for tortious breach of the implied covenant of good faith and fair dealing;

7.    For special damages for tortious breach of the implied covenant of good faith and fair dealing;

8.    For punitive and exemplary damages according to proof;

9.    For costs and pre-judgment interest according to proof;

10.    For reasonable attorney's fees; and,

11.    For such other relief as the Court deems just and proper.

### **THIRD CAUSE OF ACTION**

12.    For general damages for breach of fiduciary duty;

13.    For special damages for breach of fiduciary duty;

14.    For punitive and exemplary damages according to proof;

15.    For costs and pre-judgment interest according to proof; and,

16.    For such other relief as the Court deems just and proper.

### **FOURTH CAUSE OF ACTION**

17.    For general damages for negligence;

18.    For special damages for negligence;

19.    For costs and pre-judgment interest according to proof; and,

20.    For such other relief as the Court deems just and proper.

///

**FIFTH CAUSE OF ACTION**

21.   For general damages for intentional misrepresentation;

22.   For special damages for intentional misrepresentation;

23.   For punitive and exemplary damages according to proof;

24.   For costs and pre-judgment interest according to proof; and,

25.   For such other relief as the Court deems just and proper.

**SIXTH CAUSE OF ACTION**

26.   For an accounting demonstrating all of the sources of money used to pay premiums, all premiums paid for the insurance, all dividends earned and the treatment of all paid up additions under the insurance policy.

**DEMAND FOR JURY TRIAL**

Plaintiff requests a jury trial for this matter.

DATED: September 24, 2014          HIGGS FLETCHER & MACK LLP


By: */s/ Thomas W. Ferrell*
THOMAS W. FERRELL, ESQ.
GEOFFREY M. THORNE, ESQ.
Attorneys for Plaintiffs
EDMOND PETRUS, individually
and as Trustee of the PETRUS
FAMILY IRREVOCABLE TRUST
DTD 05/01/1991

HIGGS FLETCHER & MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

Case No.