**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

EDMOND PETRUS, individually and as Trustee of the PETRUS FAMILY IRREVOCABLE TRUST DTD 05/01/1991,

Plaintiff,

v.

NEW YORK LIFE INSURANCE COMPANY, a New York corporation and TIMOTHY R. CORBETT, an individual, and DOES 1 through 100, inclusive,

Defendant.

Case No. 14-cv-2268 BAS (JMA)

**ORDER:**
**(1) GRANTING DEFENDANTS' MOTIONS TO DISMISS [ECFS 16–19]; AND**
**(2) TERMINATING AS MOOT DEFENDANTS' MOTIONS TO DISMISS [ECFs 7–9]**

**[ECFs 7–9, 16–18]**

Before the Court are Defendants New York Life Insurance Company ("NYL") and Timothy R. Corbett's motions to dismiss Plaintiff Edmond Petrus' First Amended Complaint ("FAC", ECF 13) (ECFs 16–18) and Defendants' motions to dismiss the initial Complaint (ECFs 7–9). As the FAC superseded the initial Complaint, those motions to dismiss the initial Complaint are **TERMINATED** as **MOOT**. ECFs 7–9.

The Court decided the motions to dismiss the FAC on the papers and the parties' representations at oral argument on June 15, 2015. For the following reasons, those motions are **GRANTED**. ECFs 16–19.

**BACKGROUND**

In 1991, Mary Jean Petrus and Edmond[1] A. Petrus purchased an Insurance Policy from NYL. FAC ¶ 7. The Policy included a "Survivorship Whole Life Insurance" benefit of one million dollars and a "Dividend Optional Term Life Insurance" ("DOT") benefit also worth one million dollars. *Id.* The DOT benefit only accrued if Mary died after Edmond. *Id.* This Policy named the Petrus Family Trust (the "Trust") as its beneficiary. FAC ¶ 8. After Mary Jean's death, her son, Plaintiff Edmond Petrus, was the sole beneficiary of the Trust. *Id.*

After Edmond died in 2005, but before Mary Jean died in 2012, Corbett, the insurance agent NYL assigned to the Policy, contacted Plaintiff. FAC ¶ 11. He stated that the premium for the Policy was about to double, and that they should discuss Plaintiff's options. *Id.* During the same call, Plaintiff relayed that he was considering additional insurance on Mary Jean's life. FAC ¶ 12. In 2008, based on Corbett's advice, Plaintiff cancelled the DOT Rider, which would have provided an approximately $700,000 benefit. FAC ¶¶ 12–18. At that same time, Plaintiff secured $3 million in additional life insurance from another provider. FAC ¶ 17.

Primarily, Plaintiff claims Corbett advised that Plaintiff's premiums would double to over $57,000 per year, and that if Plaintiff cancelled the DOT, the remaining premiums would drop to "zero." FAC ¶ 13. Plaintiff alleges that the DOT premiums would in fact have not exceeded $15,000 per year up to the date of Mary Jean's death in 2012. FAC ¶ 19.

Plaintiff admits neither he nor the Trust paid premiums on the DOT after he cancelled it in 2008. FAC ¶ 28. As a result, after Mary Jean's death in 2012, NYL

[1] Edmond's name is spelled as both "Edmund" and "Edmond" in Plaintiff's FAC. *Compare* FAC ¶ 7 to ¶ 9. The Court defers to the FAC's caption's spelling of "Edmond" for both father and son.

paid $1 million in benefits for the Whole Life Insurance portion of the Policy. FAC ¶ 19.

On September 24, 2014, Plaintiff sued Corbett and NYL for breach of contract, bad faith breach of the covenant of good faith and fair dealing, breach of fiduciary duty, negligence, and intentional misrepresentation and concealment, contending he is entitled to the DOT benefit despite ceasing payment of the premiums in 2008. Defendants now move to dismiss his FAC.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alteration in original). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference

the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

As a general rule, a court freely grants leave to amend a dismissed complaint. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

**ANALYSIS**

Preliminarily, Plaintiff has conceded that he has no standing in his individual capacity, and therefore he is **DISMISSED WITH PREJUDICE** in his individual capacity.

1. Breach of Fiduciary Duty and Accounting

California law, although it imposes some fiduciary-like duties on insurers and their agents, does not recognize the insurer-insured relationship as a true "fiduciary relationship." *Vu v. Prudential Prop. & Cas. Ins. Co.*, 26 Cal. 4th 1142, 1151 (2001), *certified question from Ninth Circuit*. Thus, this district, when addressing the issue, has dismissed causes of action for breach of fiduciary duty brought by an insured against an insurer. *See Hassard, Bonnington, Roger & Huber v. Home Ins. Co.*, 740 F. Supp. 789, 791 (S.D. Cal. 1991) ("Despite the seeming trend of cases in California to analogize the insurer-insured relationship to a fiduciary relationship, the cases which have directly addressed this point have held that this relationship does not produce a fiduciary duty."); *Almon v. State Farm Fire & Cas. Co.*, 724 F. Supp. 765, 766 (S.D. Cal. 1989) ("[A]lthough the duty between the plaintiff and defendants is fiduciary in nature, there is no independent cause of action for breach of fiduciary duty.")

Further, other federal courts reviewing California insurance law have determined that life insurance does not invoke an "investment broker" relationship that would permit a breach of fiduciary duty claim. *See Scarff v. Jackson Nat. Life Ins. Co.*, No. C 03-03850 JF, 2005 WL 1562936, at *6 (N.D. Cal. June 24, 2005) (dismissing on summary judgment a breach of fiduciary duty claim stemming from a whole life insurance policy). "[A]n insurer's breach of its 'fiduciary-like duties' is adequately redressed by a claim for breach of the covenant of good faith and fair dealing implied in the insurance contract." *Tran v. Farmers Group, Inc.*, 104 Cal. App. 4th 1202, 1212 (2002), *as modified on denial of reh'g*, Jan. 27, 2003.

In addition, a demand for accounting is generally a remedy, as opposed to an independent cause of action, except "[i]n rare cases . . . when a defendant has a fiduciary duty to a plaintiff." *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1191 (N.D. Cal. 2009). Because there was no fiduciary duty imposed by the insured-insurer relationship in this case, Plaintiff's sixth cause of action for an accounting must also fail. Accordingly, the Court **DISMISSES WITH PREJUDICE** the third and sixth causes of action.

2. Breach of Contract

Plaintiff claims that despite his affirmative termination of the contract and failure to pay the DOT premiums, he is nevertheless entitled to recover under the contract. "'Termination' occurs when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach. On 'termination' all obligations which are still executory on both sides are discharged but any right based on prior breach or performance survives." 1 Witkin, Summary 10th (2005) Contracts, § 925, p. 1022 (quoting Cal. Comm. Code § 2106). This is identical to abrogation on the terms of the contract, and it brings with it the prior agreed-to consequences of termination. *See Grant v. Aerodraulics Co.*, 91 Cal. App. 2d 68, 73 (1949).

California courts have adopted New York law permitting a rider to be

severable from a life insurance contract for purposes of termination. *Blackburn v. Home Life Ins. Co. of New York*, 19 Cal.2d 226, 232 (1941) (citing *Rhine v. New York Life Ins. Co.*, 248 A.D. 120, 133, 289 N.Y.S. 117, 132 (App. Div.) *aff'd*, 273 N.Y. 1, 6 N.E.2d 74 (1936)). Once the privilege of terminating the rider is exercised, the rider is considered an independent contract. *See Id.*

Here, Plaintiff unambiguously alleges he terminated the Rider. FAC ¶ 17 ("In 2008, [...] Petrus took steps to cancel the New York Life DOT Insurance[.]"). Plaintiff argues that Defendants' misconduct excused his performance of the Rider's conditions. Pl.'s Opp. to NYL's Mot. 5:2–4, ECF 19. Even if this is true, his affirmative cancellation of the Rider relieved Defendant from any duty to perform under the Rider. Plaintiff's cited cases do not involve an affirmative termination; instead they relate to a party's failure to perform conditions precedent because they relied on the other party's fraudulent statements. *See Haserot v. Keller*, 67 Cal. App. 659 (1924). While the plaintiff in *Haserot* may have been abandoning his obligations under the contract, he never affirmatively abrogated it.

Second, the Court agrees with settled California insurance law that while riders are considered part of an overall insurance contract, they may be independently terminated and that any such independent termination renders them severed. Without this rule, cancellation of the rider would effectively function to terminate the entire contract.

Additionally, the explicit terms of the Rider support severing it from the remaining Policy. The Rider specifically states that "[y]ou can cancel this rider as of any date." Policy 2, ECF 13-1. Because the Rider's terms permit it to be independently terminated and Plaintiff alleges he did so, Plaintiff cannot sue on a breach of contract theory. Accordingly, Plaintiff's first cause of action is **DISMISSED WITH PREJUDICE.**[2]

[2] Even if the Rider is considered an integral part of the Policy and its cancellation did not end the Policy, any hypothetical claim regarding its terms would have accrued before the Rider was cancelled. Because the Rider was cancelled in 2008 and the suit was not brought until 2012, such

Under similar reasoning, failure to pay DOT benefits cannot have been in bad faith because such benefits were not owed. *See Waller v. Truck Ins. Exch.*, 11 Cal. 4th. 1, 36 (1995). Plaintiff similarly admits that to support this claim, he must prove the elements for breach of contract. Pl.'s Opp. 10:9–10. Accordingly, Plaintiff's second cause of action is also **DISMISSED WITH PREJUDICE**.

3. Statutes of Limitations

This Court sitting in diversity relies on California law to determine whether Plaintiff's claims are time barred. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 107–10 (1945). Under California Civil Procedure Code § 339, professional negligence actions are limited to two years. *Hydro-Mill Co. v. Hayward, Tilton & Rolapp Ins. Associates, Inc.*, 115 Cal. App. 4th 1145, 1154 (2004). Professional negligence actions and negligent misrepresentation actions amounting to professional negligence are identical. *Id.* Fraud actions are limited to three years. Cal. Civ. Proc. Code § 338(d). The fraud statute "begins to run when the plaintiff has information which would put a reasonable person on inquiry." *Kline v. Turner*, 87 Cal. App. 4th 1369, 1374 (2001). Similarly, a professional negligence action accrues when the injured party knows or should have known of the loss or damage suffered. Cal. Civ. Proc. Code § 339(1); *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1257 (C.D. Cal. 2003).

The California Supreme Court has held that "an insurer's disclaimer, even if 'made through fraud or mistake,' could not toll the statute of limitations." *Matsumoto v. Republic Ins. Co.*, 792 F.2d 869, 872 (9th Cir. 1986) (quoting *Neff v. New York Life Ins. Co.*, 30 Cal. 2d 165 (1947) (in bank), *distinguished but upheld*, *Vu*, 26 Cal. 4th at 1153–54).

Here, Plaintiff argued at the hearing that tort claims on a life insurance policy cannot accrue until an insured dies and the insurer refuses to pay a death benefit.

---

claims would have been brought outside the four-year statute of limitations for written contract claims. Cal. Civ. Proc. Code §§ 312, 337.

Similarly, in his brief he argued that "a cause of action begins to run when the insurer withholds benefits allegedly due under the policy by denying the insured's claim." Pl.'s Opp. 20:18–20, ECF 19.

In *Neff*, a denial of disability benefits due under a life insurance policy ten years prior to the insured's death began the statutory period. 30 Cal. 2d at 171. The insurer stated unequivocally that it would not pay disability benefits at the death of the insured. The California Supreme Court determined that this disclaimer that no disability benefits would be owed under the policy served to begin the statutory period, not the inevitable failure to pay the disability benefits after the insured's death. *Id.* at 172. At that time, the insured had suffered the harm of the insurer's allegedly wrongful action. Plaintiff's termination of the DOT Rider serves an identical purpose here, as after he terminated the policy there was no possibility that the DOT Rider's benefits would be paid.

Similarly, in *Kersh v. Manulife Financial Corp.*, 792 F.Supp.2d 1111, 1120 (D. Haw. 2011), the district court applied common law doctrine to find that an insured's claim against a life insurer accrues "upon the insurer's inconsistent statements, as opposed to when performance is ultimately due[.]". Specifically, the insurer's request of "premium payments that were contrary to [its insured's] understanding of the policy" and the insurer's "repeated[] assert[ions] . . . that the policy had terminated" caused the insured's claims to accrue. *Id.* at 1120. This approach "makes common sense because it allows the insured, as opposed to his heirs, to bring suit, and also allows a suit to commence while evidence and witnesses are still available." *Id.*[3]

Here, Plaintiff certainly knew that NYL would not pay the DOT benefits on

---

[3] *Kersh* also discussed an alternative approach, illustrated in the Restatement (Second) of Contracts § 253, based on the doctrine of anticipatory repudiation. Under this doctrine, an insured's repudiation (or breach) of a contract before the insured has the opportunity to pay benefits on the policy gives rise to a claim at the time of repudiation. Here it appears Plaintiff failed to pay premiums on the contract in 2008, and so his cause of action would still have accrued in 2008. With the present facts, both doctrines yield identical results.

Mary Jean's death as soon as he terminated the Rider. This served to begin the statutory period. As a result, the statute of limitations on all claims began to run in 2008. The present lawsuit commenced on September 24, 2014, at least five years after the causes of action accrued. ECF 1. Therefore the Court must dismiss the remaining causes of actions under the applicable statutes of limitations, unless the statute was tolled.

Plaintiff argues the statutory period should be tolled because he did not discover the injury until he requested NYL records on premium payments and policy dividends in August 2012. Pl.'s Opp. 21:5–12 (citing FAC ¶ 14). "Application of the date-of-discovery accrual rule has been limited, however, to those cases where the *factual* predicate for the plaintiff's injuries was concealed or misrepresented." *Matsumoto*, 792 F.2d at 872 (original italics).

At this point, Plaintiff fails to allege sufficient facts in the FAC showing that the factual predicate for Plaintiff's injuries was concealed or misrepresented. However, because it is possible Plaintiff could allege such facts consistent with the FAC, the Court grants Plaintiff leave to amend to include facts demonstrating a sufficient basis for tolling the statutes of limitations. Accordingly, the Court **DISMISSES** the fourth and fifth causes of action **WITHOUT PREJUDICE**.

**CONCLUSION**

For the foregoing reasons, the Court **DISMISSES** the following causes of action **WITHOUT LEAVE TO AMEND**:

(1) First cause of action for breach of contract;

(2) Second cause of action for breach of good faith and fair dealing;

(3) Third cause of action for breach of fiduciary duty; and

(4) Sixth cause of action for an accounting.

The fourth cause of action for negligence and the fifth cause of action for intentional misrepresentation are **DISMISSED WITH LEAVE TO AMEND**. All other causes of action may not be reasserted. Plaintiff must allege facts in his

amended complaint sufficient to toll the statute of limitations. If he fails to do so, the Court may dismiss the action in its entirety with prejudice. Plaintiff's amended complaint, if any, must be filed **within 21 days** of this Order.

**IT IS SO ORDERED.**

Dated: June 18, 2015

Hon. Cynthia Bashant
United States District Judge