UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDMOND PETRUS, as Trustee of the PETRUS FAMILY IRREVOCABLE TRUST DTD 05/01/1991,<br><br>         Plaintiff,<br><br> v.<br><br>NEW YORK LIFE INSURANCE COMPANY, a New York corporation, and TIMOTHY R. CORBETT, an individual, and DOES 1 through 100, inclusive,<br><br>         Defendants. | Case No. 14-cv-2268-BAS-JMA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

   This matter comes before the Court on Defendant Timothy Corbett's Motion to Dismiss (ECF No. 39.) Plaintiff Edmond Petrus has opposed (ECF No. 42), and Corbett has replied (ECF No. 43). The matter was taken under submission on the papers. *See* Civ. L.R. 7.1(d)(1). For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Corbett's Motion to Dismiss.

**I. BACKGROUND**

   In 1991, Plaintiff's parents, Mary Jean Petrus and Edmund A. Petrus purchased an Insurance Policy ("Policy") from New York Life Insurance Company ("New York

Life"). (ECF No. 33, Second Am. Compl. ("SAC") ¶ 7.) The Policy included a "Survivorship Whole Life Insurance" benefit of $1 million and a "Dividend Optional Term Life Insurance Rider ("DOT Rider") worth an additional $1 million. (ECF No. 33, Exh. 1.) The Policy named the Petrus Family Trust (the "Trust") as the beneficiary, and only accrued if Mary Jean died after Edmund. (SAC ¶¶ 7, 8.) After Edmund's death, Plaintiff Edmond Petrus became Trustee of the Trust. (SAC ¶ 8.) He is also the sole beneficiary of the Trust. *Id*.

After Edmund's death in 2005, but before Mary Jean's death in 2012, Corbett, the NYL insurance agent assigned to the Policy, contacted Plaintiff. (SAC ¶ 11.) Corbett allegedly told Petrus that the premium for the Policy was about to double, and that they should discuss Plaintiff's options. *Id*. Plaintiff stated that he was considering purchasing additional life insurance on Mary Jean's life, but Corbett introduced the topic that new, less expensive insurance could be used to replace existing, more expensive insurance. (SAC ¶ 12.) This initial telephone call led to a series of discussions between Plaintiff and Corbett about the existing Policy, potential additional insurance, and the cost impact of the DOT Rider. (SAC ¶¶ 12, 13, 15, 16.) In 2008, based on Corbett's advice, Plaintiff cancelled the DOT Rider (SAC ¶¶ 20, 23.) As a result, when Mary Jean passed away in 2012, NYL only paid Plaintiff approximately $1.29 million in benefits, rather than the $2 million Mary Jean and Edmund purchased in 1991. (SAC ¶ 23.) Had Plaintiff kept the DOT Rider as part of the Policy, he would have received approximately $707,000 more in benefits then he ultimately received. *Id*.

Plaintiff alleges that he canceled the DOT Rider based on false representations from Corbett. Specifically, Plaintiff alleges that Corbett made the following misrepresentations: (1) that the DOT Rider would cause a more than 100 percent increase in the annual premium for the Policy from approximately $24,000 to $57,000 (SAC ¶¶ 13, 15); (2) that cancelling the DOT Rider would prevent this increase (SAC ¶ 13); (3) that the DOT Rider was the most expensive insurance (SAC ¶ 15); and (4)

that policy dividends and paid-up additions would be insufficient to pay for premiums unless Plaintiff cancelled the DOT Rider (*Id.*). Plaintiff alleges that it was not until after he requested and received the NYL dividend and premium record on the Policy in late September 2012 that he learned that these representations were false. (SAC ¶ 17.) For example, according to Plaintiff, the NYL accounting record shows that cancelling the DOT Rider did *not* prevent the Policy premium from more than doubling and that the dividends and paid-up additions were in fact sufficient to cover the full Policy premium. (SAC ¶¶ 17–19.)

The operative SAC brings causes of action for negligent misrepresentation and intentional misrepresentation.[12] Plaintiff's demand for relief includes the $707,000 he would have received had he not cancelled the DOT Rider. (SAC ¶¶ 42, 52.) Corbett moves to dismiss on the grounds that Plaintiff has failed to state a claim and failed to meet the heightened pleading requirements applicable to fraud claims. (ECF No. 39, Mot. to Dismiss ("MTD").) Corbett also argues that Plaintiff fails to assert a permissible form of damages and that Plaintiff's claims are barred by the statute of limitations. *Id*.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of claims alleged in a complaint. *See Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011). Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696,

---

[1] Although the caption of the SAC reads "Negligence and Intentional Misrepresentation," the negligence cause of action clearly is a claim for negligent misrepresentation. (See SAC ¶¶ 37–42; Pl.'s Opp'n 6:23–7:6.) The Court construes it as such.

[2] Corbett notes that Plaintiff on a couple of occasions in the SAC appears to refer to himself in his individual capacity even though he has been dismissed with prejudice in his individual capacity and can only proceed in his capacity as Trustee of the Petrus Family Trust. Corbett's point is well taken. Although the circumstances do not warrant refiling the SAC, Plaintiff is instructed to ensure future filings are clear that Plaintiff is proceeding as the Trustee of the Trust and not in his individual capacity.

699 (9th Cir. 1990). In evaluating a motion to dismiss, the court must construe the pleadings in the light most favorable to the plaintiff, accepting as true all factual allegations and any reasonable inferences that can be drawn therefrom. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not, however, assume the truth of mere legal conclusions or inferences that are unreasonable in light of the facts alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (quotation marks omitted). The plausibility standard "is not akin to a 'probability requirement,'" but requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. In determining whether the complaint states a plausible claim to relief, the reviewing court conducts a "context-specific" analysis, bringing to bear its "judicial experience and common sense." *Id.* at 679. If the reviewing court dismisses a complaint for failure to state a claim, it should freely grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal quotation marks and citation omitted).

A complaint alleging fraud must meet the heightened pleading standard of Rule 9(b), which requires a party to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). To satisfy this heightened pleading standard, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)); *see also Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient."). In addition, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as recognized in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The particularity requirement ensures defendants have sufficient notice of the particular misconduct alleged to constitute the fraud "so that they can defend against the charge and not just deny that they have done anything wrong." *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (internal quotation marks omitted)). The purpose of Rule 9(b) is served when the pleading contains an "amount of precision" that apprises defendant of the nature of the claim and the acts or statements that form the basis of the alleged fraud. 5A Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 1297 (3d ed.).

**A. Request for Judicial Notice**

Corbett requests that the Court take judicial notice of three documents: (1) a February 15, 2006 letter ("February 15 letter") signed by Corbett and addressed to William Sheridan, the then-Trustee of the Petrus Family Trust; (2) a collection of three emails dated March 3, 2008 ("March 3 emails"), sent at different times on that date between Sheridan and two NYL officials; and (3) a memorandum dated February 13,

2006 ("February 13 memo"), written by Corbett, regarding the Policy. (ECF No. 39, Exh. 5.)

The Court notes first that Corbett's request is more properly considered a request for incorporation by reference, rather than a request for judicial notice. Under the doctrine of judicial notice, courts may take judicial notice of adjudicative facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). Here, however, the issue is not adjudicative facts not subject to reasonable dispute. Rather, Corbett asks the Court to consider documents referred to in the complaint and that form the basis of Plaintiff's claims. The Court may consider these types of documents under the incorporation by reference doctrine, so long as no party questions the authenticity of the documents in question. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).

The SAC refers to both the February 13 memo and the February 15 letter. Both documents are central to Plaintiff's misrepresentation claims. (SAC ¶ 13.) Plaintiff argues that consideration of the documents is improper, but does not question the authenticity of the documents. (Pl.'s Opp'n 12:26–13:21.) Accordingly, the Court will consider as part of the SAC the February 13 memo and the February 15 letter.[3] The Court does not consider the March 3 emails because these emails were not referred to in the SAC and are not clearly central to Plaintiff's claims.

## III.   DISCUSSION

Corbett moves to dismiss the negligent misrepresentation claim for failure to allege a duty of care, proximate cause, and resulting damages (MTD, 8:14–20), and moves to dismiss the intentional misrepresentation claim primarily for failure to comply with Rule 9(b)'s heightened pleading standard (MTD, 17–20). Corbett also argues that Plaintiff seeks an impermissible form of damages and that the claims are barred by the statute of limitations. (MTD, 20:18–24:1.)

---

[3] The Court also incorporates by reference a copy of the Policy at issue, which was attached as ECF No. 33, Exh. 1.

Under California law, the elements of intentional misrepresentation are: (1) a false representation of material fact; (2) knowledge of the falsity of the misrepresentation (or "scienter"); (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages. *Cadlo v. Owens-Illinois, Inc.*, 23 Cal.Rptr.3d 1, 5 (Ct.App. 2004). The elements of negligent misrepresentation are the same, except that "negligent misrepresentation does not require scienter or intent to defraud." *Small v. Fritz Cos., Inc.*, 65 P.3d 1255, 1258 (Cal. 2003). Rather, to plead negligent misrepresentation, it is sufficient to allege that the defendant lacked reasonable grounds for believing the representation was true. *Id*.

**A. Intentional Misrepresentation**

The Court addresses first Corbett's contention that the intentional misrepresentation claim fails to comply with Rule 9(b)'s heightened pleading standard.[4] Specifically, Corbett argues that Plaintiff did not allege with specificity what made the representations false; did not allege the representations were material; and did not adequately allege justifiable reliance. The Court disagrees.

The SAC meets the requirements of Rule 9(b). Plaintiff has identified the "who" (Corbett), "what" (information and advice regarding the cost impact of the DOT Rider), "when" (multiple occasions beginning in 2005 through 2008), "where" (telephonically and in writing) and "how" of the misconduct alleged. (SAC ¶¶ 11–20.) Plaintiff clearly alleges that what made the representations false was that the DOT insurance was not actually the cause for the premium increase and that cancelling the DOT insurance would not reduce the premium increase to zero. (SAC ¶¶ 17–19.) Plaintiff also alleges that Corbett knew the representations were false when made (SAC ¶ 47), that Corbett intended for Plaintiff to rely on the misrepresentations (SAC ¶ 49), and that Plaintiff justifiably relied on the misrepresentations given Corbett's insistence that he was in the best position to know about the DOT insurance product

---

[4] Corbett contends that Plaintiff's negligent misrepresentation claim is also subject to Rule 9(b), but does not specifically argue that it fails on these grounds. (MTD, 7:13–15, 8:14–20.)

1  (SAC ¶ 50). Thus, Plaintiff has alleged the elements of intentional misrepresentation
2  with sufficient specificity to give Corbett "notice of the particular misconduct which
3  is alleged to constitute the fraud charged." *Semegen v. Weidner*, 780 F.2d 727, 731
4  (9th Cir. 1985). These factual allegations, taken as true, state a claim to relief that is
5  plausible on its face.
6        The Court notes that Plaintiff has not narrowed down Rule 9(b)'s "when" of the
7  misrepresentations to an exact date, but instead references multiple interactions with
8  Corbett from 2005, after Edmund's death, through 2008, when Plaintiff cancelled the
9  Rider. Exact dates, however, are not always necessary to meet the Rule 9(b) pleading
10 standard. *See Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1042 (9th
11 Cir. 2010) (holding that fraud claims were pled with particularity when the allegations
12 concerned a "relatively definite time frame" identifiable by discrete events, even
13 though exact dates were not provided); *U.S. Med. Instruments, Inc. v. CFS N. Am.,*
14 *Inc.*, No. 13–cv–349–BEN (DHB), 2013 WL 6055387, at *6 (S.D. Cal. Nov. 13, 2013)
15 (finding that Rule 9(b) required plaintiff to specify 'to whom' the fraudulent statement
16 was made "particularly given that an exact date was not specified" in the pleadings).
17 Here, the allegations taken as a whole are sufficiently detailed to give Corbett notice
18 of the particular misconduct alleged. Corbett knows that what is at issue are his
19 representations to Plaintiff about the impact of the DOT Rider on the premium for the
20 Policy. Indeed, according to the SAC, Corbett himself initiated discussion on the
21 topic. Pleading the exact dates of each of the relevant conversations or exchanges
22 would not assist Corbett in identifying the oral and written representations at issue any
23 more than pleading the general time frame. *See Izsak v. Wells Fargo Bank, N.A.*, No.
24 C 13–05362 SI, 2014 WL 1478711, at *3 (N.D. Cal. Apr. 14, 2014) (finding that Rule
25 9(b) did not require an exact date when the date would not assist defendant in
26 identifying the conversation at issue nor reduce the burdens of a necessary records
27 search). Thus, the Court does not consider the failure to plead exact dates as fatal to
28 the misrepresentation claims. *Cf. Odom v. Microsoft Corp.*, 486 F.3d 541, 555 (9th

Cir. 2007) (holding that plaintiffs met Rule 9(b) when the court was "given no reason to believe that defendants will be hampered in their defense").

Corbett also argues that Plaintiff does not allege a "material" misrepresentation, but instead alleges a misrepresentation that did not actually impact his decision to cancel the DOT Rider. (MTD, 19:13–20.) Corbett misreads the SAC. Plaintiff clearly alleges that the reason he decided to cancel the DOT Rider was because Corbett represented that doing so would eliminate a substantial premium increase for the Policy. It was Corbett's representations that provided the impetus for Plaintiff's decision. (SAC ¶ 20.) Plaintiff alleges that he would have kept the DOT Rider had he known the truth. (SAC ¶¶ 41, 51.) This clearly amounts to an allegation that the misrepresentation was material. *See Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 919 (Cal. 1997) ("A misrepresentation is judged to be material if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.") (internal quotation marks and citation omitted).

### B. Negligent Misrepresentation

Corbett's main argument for dismissing the negligent misrepresentation claim is that, as an insurance agent, Corbett had no duty to volunteer advice or provide Plaintiff information regarding the DOT Rider. Corbett points out that his only duty was to use reasonable care in procuring any insurance requested by Plaintiff, and that Plaintiff fails to allege any of the conditions under which an insurance agent assumes a duty beyond providing the requested insurance.[5] (MTD, 8–10.)

Corbett's argument ultimately fails. Although the Court agrees that Plaintiff fails to successfully allege any of the conditions under which an insurance agent assumes an expanded duty of care, this is not a case in which the duty at issue is

---

[5] The conditions under which an insurance agent assumes additional duties are outlined in the widely-cited case, *Fitzpatrick v. Hayes*, 67 Cal.Rptr.2d 445 (Ct.App. 1997).

defined by Corbett's role as an insurance agent.[6] Instead, the duty here arises from the long-standing principle that "where one does speak he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated." *Vega v. Jones, Day, Reavis & Progue*, 17 Cal.Rptr.3d 26, 33 (Ct.App. 2004) (citation omitted). A duty to speak truthfully concerning the DOT Rider arose not because Corbett is an insurance agent, but because he chose to provide information regarding the Rider. Even if Corbett had no duty to provide the information requested by Petrus, he assumed a duty to speak truthfully because "[o]ne who is asked for or volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud." *Cicone v. URS Corp.*, 227 Cal.Rptr. 887, 891 (Ct.App. 1986) (citations omitted). Thus, Plaintiff's allegation that Corbett owed a duty to provide accurate and true information is sufficiently pled. (SAC, 12:24–28.)

Corbett also argues, relying primarily on a document not being considered by the Court, that Plaintiff has not alleged proximate cause between the alleged misrepresentations and any damages. (MTD, 16:18–17:9.) Corbett is incorrect. Plaintiff clearly alleges that the false representations induced him to cancel the DOT Rider, which resulted in Plaintiff receiving $707,000 less than he would have received had he not acted based on the misrepresentations. This is an allegation that the misrepresentations proximately caused the damages.

**C. Documents Incorporated by Reference Do Not Demonstrate That Plaintiff Fails to State a Claim**

Finally, Corbett argues that Plaintiff's allegations fail generally because the allegations are contradicted by documents referred to in the SAC. (MTD, 13:20–14:4.) For example, Corbett argues that the February 15 letter that Plaintiff references in the

---

[6] Indeed, the issue here is not, as it tends to be in the *Fitzpatrick* line of cases, whether an insurance agent had a duty to volunteer to an insured that the latter should procure additional or different insurance coverage based on representations the agent has made about the coverage provided. Rather, Plaintiff is alleging that Corbett has misrepresented the cost impact of the DOT Rider—not the "nature, extent, or scope of the coverage" of the Rider. *Fitzpatrick*, 67 Cal.Rptr.2d at 452.

1  SAC is merely a forecast of the premium on the Policy based on current dividend
2  rates, rather than a guarantee that cancellation of the DOT Rider would prevent a
3  premium increase. (*Id.*) Corbett also argues that the alleged misrepresentation that the
4  DOT Rider would lead the premiums to double is contradicted by the schedule of
5  premiums listed in the Policy itself, which does not indicate that is the DOT Rider that
6  is causing the increase in premium. (MTD, 14:5–17.)

7  The extent to which the attached documents contradict Plaintiff's allegations is
8  debatable, but the Court need not ultimately resolve the question. In this case, the
9  misrepresentations are alleged to have occurred in a series of conversations and
10 written correspondence that both preceded and followed the documents referenced in
11 the SAC. That is, Plaintiff references the February 13 memo and February 15 letter as
12 examples where the misrepresentations were made, but he does not allege that these
13 are the only instances. (SAC ¶ 13.) Furthermore, the memo and letter themselves are
14 not self-defining: their interpretation would necessarily be colored by what Corbett
15 communicated to Petrus before and after. Thus, even as the Court incorporates by
16 reference the contents of these documents, the documents do not definitively show
17 that Plaintiff has failed to state a claim. If Corbett represented to Petrus that cancelling
18 the DOT Rider would prevent the premium increase, as Petrus alleges, then the mere
19 possibility that the February 13 memo, February 15 letter, and Policy can be
20 interpreted to suggest Corbett also made other representations will not defeat
21 Plaintiff's claims at this stage of the litigation.

**D. Failure to Allege Permissible Form of Damages Does Not Justify Dismissal for Failure to State a Claim**

24 The Court turns next to Corbett's argument that Plaintiff fails to allege a
25 permissible form of damages.[7] Specifically, Corbett contends that Plaintiff's request

---

[7] Corbett also argues that Plaintiff fails to assert any damages because he ultimately purchased other insurance. (MTD, 17:4–6.) This argument is intertwined with the "impermissible damages" argument and fails for similar reasons, as explained here.

for $707,000 in death benefits—the amount he would have received had he not canceled the DOT Rider—is impermissible because the amount reflects a benefit-of-the-bargain theory of damages, which generally is available only in contract cases, rather than the out-of-pocket measure of damages generally applicable to tort actions. (MTD, 20:18–21:14.) Corbett argues that "Plaintiff's claims should all therefore be dismissed, as they fail to assert the essential element of a permissible form of damages." (MTD, 21:12–14.)

      Corbett is likely correct that the out-of-pocket measure of damages is the proper basis for measuring damages in this case. *See, e.g.*, *Christiansen v. Roddy*, 231 Cal.Rptr. 72, 78 (Ct.App. 1986) (explaining that the proper measure of damages for negligent misrepresentation is the "out-of-pocket" measure). Plaintiff is not alleging a breach of contract,[8] and so presumably would not be able to rely on cases holding that fraud plaintiffs may recover in tort and contract when the fraud is committed during contract formation or performance. *See, e.g.*, *Harris v. Atl. Richfield Co.*, 17 Cal.Rptr.2d 649, 654 (Ct.App. 1993). However, even if Petrus has selected an improper measure of damages, "the availability of the specific relief requested pursuant to any given count of the Complaint is not relevant to the question of whether [Plaintiff] has stated a claim." *Burkina Wear, Inc. v. Campagnolo, S.R.L.*, No. 07 Civ. 3610, 2008 WL 1007634, *3 (S.D.N.Y. Apr. 9, 2008). So long as the statement of the claim indicates that Plaintiff may be entitled to some form of damages, selecting the wrong theory by which to measure those damages will not be fatal to the pleading. *See* 5 Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 1255 (3d ed.); *see also Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002) ("Although Rule 8(a)(3) of the civil rules requires that a complaint contain 'a demand for the judgment for the relief the pleader seeks,' the demand is not itself a part of the plaintiff's claim, and so failure to specify relief to which the plaintiff was entitled would not warrant dismissal

---

[8] The Court previously dismissed with prejudice Plaintiff's breach of contract claim in an Order dated June 18, 2015 (ECF No. 28.)

. . . for failure to state a claim.") (citations omitted). Here, Plaintiff has alleged negligent and intentional misrepresentation and, at a minimum, would be entitled to out-of-pocket and related damages if able to prove his case at trial. Punitive damages would be recoverable on the intentional misrepresentation claim. *Alliance Mortg. Co. v. Rothwell*, 10 Cal.4th 1226, 1241 (1995) ("Punitive damages are recoverable in those fraud actions involving intentional, but not negligent, misrepresentations.") Thus, Plaintiff's statement of the claim entitles him to some form of relief even if not the benefit-of-the-bargain damages he specifies in the SAC. Accordingly, dismissal on these grounds is unwarranted.

### E. Statute of Limitations

Finally, Corbett argues that Plaintiff's claims are barred by the statute of limitations. In California, the statute of limitations for negligent and intentional misrepresentation is three years. *See Broberg v. Guardian Life Ins. Co. of Am.*, 90 Cal.Rptr.3d 225, 231 (Ct.App. 2009); Code Civ. Proc. § 338(d). *But see Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Assoc., Inc.*, 10 Cal.Rptr.3d 582, 590 (Ct.App. 2004) ("A cause of action for negligent misrepresentation is barred by the two-year statute of limitations where the allegations amount to a claim of professional negligence."). The limitations period only begins to run when the aggrieved party discovers "the facts constituting the fraud." Code Civ. Proc. § 338(d) ("An action for relief on the ground of fraud . . . is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud[.]"). California courts interpret "discovery" in this context to mean "when the plaintiff has information which would put a reasonable person on inquiry" of the fraud. *Kline v Turner*, 105 Cal.Rptr.2d 699, 702 (Ct.App. 2001). Corbett contends that Plaintiff was on reasonable inquiry when he canceled the DOT Rider in 2008—the point at which he knew he would not receive the $707,000 he now seeks in damages—and so the statute of limitations expired at the end of 2011 at the latest. (MTD, 22:5–11.) As a result, Corbett argues, the only way Plaintiff's claims are not barred is if he can show he is entitled to tolling of the

statute, which requires Plaintiff, among other things, to plead an inability to make earlier discovery of the facts constituting the fraud despite reasonable diligence. (MTD, 22:17–23:5.)

The Court finds Corbett's arguments unavailing. First, the limitations period for fraud claims begins to run upon discovery of facts constituting the fraud, not upon a party taking action induced by the fraud. Corbett argues that once Plaintiff canceled the DOT Rider, the damage was done and so the claim began to accrue. But under California law unless cancellation of the Rider was accompanied by discovery of the fraud, or by facts sufficient to put Plaintiff on inquiry notice of fraud, the statute on the fraud claims did not begin to run. Second, and relatedly, although a party must plead an inability to make an earlier discovery of facts constituting the fraud if the party was on notice of the fraud more than three years prior to bringing the fraud claim, nothing in the SAC indicates that Plaintiff was on notice. Rather, based on the SAC, the statute of limitations did not even begin to run until Plaintiff requested and received from NYL the premium and dividend accounting in late September 2012. (SAC ¶¶ 17, 19.) It is true that under the discovery rule the cause of action accrues once plaintiff has reason to suspect wrongdoing. *E-Fab, Inc. v. Accountants, Inc. Serv.*, 64 Cal.Rptr.3d 9, 16 (Ct.App. 2007) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 917 (Cal. 2005)). However, "[i]f there are no circumstances to arouse the suspicion of a reasonably prudent person, the [fraud] statute will not commence to run, even though the means of obtaining the information are available." 3 Witkin, Cal. Proc. (5th ed. 2008) Actions, § 662; *see also Snow v. A.H. Robins Co.*, 211 Cal.Rptr. 271, 279–80 (Ct.App. 1985) (holding that plaintiff's fraud cause of action did not accrue until she became aware of facts from which she could conclude that defendant fraudulently misrepresented a material fact). Here, there appear to be no circumstances that would have aroused Plaintiff's suspicion that Corbett had misrepresented the cost impact of the DOT Rider. On the face of the SAC, Plaintiff did not discover facts concerning the possibility of fraud until reviewing the

accounting records he received in September 2012. Thus, the Court finds that Plaintiff was not required to plead an inability to make earlier discovery of facts constituting the fraud.[9]

### F. Allegations that Cannot Form the Basis of Plaintiff's Fraud Claims

Corbett argues that three allegations made by Plaintiff cannot form the basis of Plaintiff's negligent and intentional misrepresentation claims against Corbett. These allegations are: (1) that Corbett breached his duty by failing to advise Plaintiff how NYL was crediting the premium for the Rider (SAC ¶ 28(d)); (2) that Corbett breached his duty by failing to maintain records of communications concerning the Policy (SAC ¶ 28(f)); and (3) that Corbett breached his duty by failing to follow instructions concerning the application of dividends (SAC ¶ 28(b)). The Court agrees. It is not clear whether these three allegations were mistakenly carried over from the FAC, which alleged causes of action that may have made these allegations relevant, but it is clear that the allegations are not relevant to the misrepresentation claims against Corbett. Indeed, Plaintiff makes no effort to connect these allegations to the misrepresentation claims, and instead discusses these allegations in context of a "fiduciary duty" owed to Plaintiff.[10] Accordingly, the Court **GRANTS** this portion of Corbett's Motion to Dismiss and dismisses the allegations made in paragraphs 28(b), 28(d), and 28(f) of the SAC as to Corbett.

---

[9] The Court notes that in its June 18, 2015 Order it granted Plaintiff leave to amend to demonstrate a "sufficient basis for tolling the statutes of limitation" on the negligent and intentional misrepresentation claims. (ECF No. 28, 9:17.) Given the allegations provided in the SAC, however, this is not strictly necessary. Where, as here, Plaintiff was not on inquiry notice of the facts constituting the fraud, it is not necessary to "toll" the statute.

Alternatively, the Court notes that Plaintiff has met the requirement set forth in the June 18, 2015 Order to allege sufficient facts that the factual predicate for the misrepresentation claim was concealed. As stated above, Plaintiff alleges that he did not discover that Corbett's representations were false until he requested and reviewed the NYL premium and dividend record in late September 2012.

[10] The Court previously dismissed Plaintiff's breach of fiduciary claim with prejudice. Thus, the reference to a "fiduciary" duty in paragraph 28 of the SAC is stricken.

## IV. CONCLUSION & ORDER

The Court's role at this stage of the litigation is not to determine whether Plaintiff is likely to succeed on the merits, but to determine whether he states a claim to relief that is plausible on its face. *See Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011). Here, Plaintiff has alleged the elements of negligent and intentional misrepresentation with sufficient particularity, and would be entitled to some form of damages if ultimately successful on those claims. That is all the Federal Rules require. Thus, Corbett's Motion to Dismiss is **DENIED** to the extent he argues that Plaintiff fails to state a claim, fails to meet Rule 9(b)'s heightened pleading requirements, or that Plaintiff's claims are barred by the relevant statute of limitations.

However, Plaintiff also includes allegations not applicable to the fraud claims against Corbett. These allegations—stated in SAC ¶¶ 28(b), 28(d), and 28(f)—are not relevant to the negligent and intentional misrepresentation claims brought in the SAC. Accordingly, the Court **GRANTS** Corbett's Motion to Dismiss with respect to the allegations in those paragraphs.

IT IS SO ORDERED.

DATED:  March 31, 2016

Hon. Cynthia Bashant
United States District Judge