# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDMOND PETRUS, as Trustee of the PETRUS FAMILY IRREVOCABLE TRUST DTD 05/01/1991,<br><br>                              Plaintiff,<br>v.<br>NEW YORK LIFE INSURANCE COMPANY, a New York corporation, and TIMOTHY R. CORBETT, an individual, and DOES 1 through 100, inclusive,<br>                              Defendants. | Case No. 14-cv-2268-BAS-JMA<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

       Defendants argue this Court should limit Plaintiff's damages under the "out-of-pocket" measure of damages. Although the Court agrees that the "out-of-pocket" measure is the correct way of calculating Plaintiff's damages, the Court finds that a factual dispute exists as to whether Plaintiff would have purchased the additional $3 million coverage in addition to the New York Life Insurance policies and whether he cancelled the DOT Rider solely because Mr. Corbett told him the cost of the DOT Rider was going to increase drastically. Therefore, Summary Judgment is inappropriate and the Motions for Partial Summary Judgment are **DENIED**. (ECF No.

51, 52.)

## I.     BACKGROUND

In 1991, Edmond Petrus' parents purchased a "second to die" New York Life Insurance ("NYL") policy, which provided two forms of life insurance: (1) Survivorship whole life insurance with benefits of $1 million; and (2) a Dividend Optional Term life insurance rider ("DOT") with benefits of an additional $1 million. (JSUF, ECF No. 55-1, ¶ 1.)  The DOT benefit accrued only if Edmond's mother, Mary Jean, died after her husband.  (SAC, ECF No. 33, ¶ 7.)  The NYL policy named the Petrus Family Trust as its beneficiary.  (SAC ¶ 8.)  After Mary Jean's death, her son Edmond was the sole beneficiary of the Petrus Family Trust.  (*Id*.)

After Mary Jean's husband died in 2005, but before Mary Jean died in 2012, Edmond Petrus spoke with Defendant Corbett.  (Declaration of Edmond Petrus, ECF No. 53-1 ("Petrus Decl.") ¶ 2.)  Petrus claims he intended to purchase an additional $3 million in life insurance on his mother's life.  (Petrus Decl. ¶ 2.)

Petrus will testify that Corbett told him the premiums on the DOT were set to increase from $29,000 to $59,000. (Petrus Decl. ¶ 3.)  Corbett recommended Petrus cancel the DOT and a $1 million Mutual of Omaha life insurance policy and then purchase a new $3 million policy from NYL.  (JSUF ¶ 3.)  Petrus declined to do so, but did purchase $3 million in coverage from a NYL competitor.  (JSUF ¶ 4.)

Petrus will testify that he cancelled the DOT two years later in 2008 because Corbett had told him the premiums were going to increase, the DOT was the most expensive insurance, and because Corbett told him the paid-up insurance and dividends earned by the policy would not be enough to pay the annual premium for the entire policy unless the Trust dropped the DOT rider.  (Petrus Decl. ¶ 6.)  According to Petrus, Corbett's statements were false.  The DOT rider was not the cause for the increase in premium; the DOT was not the most expensive but was the least expensive insurance; and the dividends and paid-up additions accruing to the policy were sufficient to pay the entire policy including the DOT insurance.  (SAC ¶

17.) Petrus claims if Corbett had not advised him to drop the $1 million DOT, he would have kept this DOT rider (on top of the other purchased $3 million in life insurance) and would have received the additional benefit of approximately $700,000. (Petrus Decl. ¶¶ 2, 6, 8.)

Instead, upon the death of Mary Jean in July 2012, NYL paid the Trust the death benefits from the Whole Life Insurance in the amount of $1,293,102.48—the $1 million Whole Life plus the approximately $300,00 in paid up additions.  Petrus argues he should have received $2 million from NYL because he was misled into dropping the DOT rider.

Upon the death of Mary Jean, the Trust also received approximately $3 million in benefits from the NYL competitor and the $1 million from the Mutual of Omaha policy. (JSUF ¶ 5.)

Plaintiff's remaining claims are two tort causes of action for intentional misrepresentation and negligent misrepresentation. (SAC, ECF No. 33.)  The Court dismissed Plaintiff's claims for breach of fiduciary duty and breach of contract. (ECF No. 28.)  Defendant Corbett moves for partial summary judgment on the issue of damages. (ECF No. 51.)  Defendant NYL also moves for partial summary judgment and joins Corbett's Motion. (ECF No. 52.)

**II.    LEGAL STANDARD**

Summary Judgment is appropriate under Rule 56(a) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of

establishing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id*. at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson,* 477 U.S. at 252). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting former Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita.* 475 U.S. at 587. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment.*"* *Anderson*, 477 U.S. at 255.

## III.   ANALYSIS

"The proper measure of tort damages is the 'out-of pocket' measure; successful tort plaintiffs are not entitled to have damages computed on a contract, or 'benefit-of-the-bargain' theory." *Christiansen v. Roddy,* 231 Cal. Rptr. 72, 78 (Cal. App. 1986),

(citing Cal. Civ. C. §§ 3333, 3343). Furthermore, "[a] plaintiff in a tort action is not, in being awarded damages, to be placed in a better position than he would have been had the wrong not been done." *Id.* (quoting *Valdez v. Taylor Auto. Co.*, 278 P.2d 91, 98 (Cal. App. 1954)).

Defendants argue that under this out-of-pocket damages measure, Plaintiff is only entitled to the difference between what he would have paid for the $707,000 coverage for the DOT rider had he kept it and the cost of the first $707,000 in new coverage he purchased from the NYL competitor to replace the DOT rider. Underpinning this argument is Defendants' assumption that the purchase of the new coverage was to replace the DOT rider. This factual issue is very much in dispute. (*See* Petrus Decl. ¶ 2.) Petrus claims the purchase of the additional $3 million in life insurance was completely independent of the DOT rider cancellation and that, in fact, he wished to obtain $6 million in life insurance. (Petrus Decl. ¶ 2.) He claims he did not obtain the full $6 million in life insurance because he was under the misapprehension that the additional $700,000 from the DOT Rider would have been too expensive. (Petrus Decl. ¶ 6.)

If Plaintiff is successful in proving these facts at trial—that the purchase of $3 million life insurance was completely separate from the NYL insurance and that the only reason he cancelled the DOT rider was because of some alleged misrepresentation (either intentional or negligent) of Mr. Corbett—then the out-of-pocket measure would be the difference between what he would have had if Mr. Corbett had not made the misrepresentation (the $700,000 benefit) less the premiums that he would have paid.

Alternatively, if the trier of fact concludes that the $3 million in new life insurance was to replace the DOT rider, then Defendants correctly outline that Plaintiff would only be entitled to the difference between what he would have paid for the DOT rider and the cost of the new $700,000 in coverage that he purchased to replace the DOT rider.

Because a genuine factual dispute remains as to whether the new life insurance replaced the DOT rider or not, summary judgment on this issue is not appropriate.

## IV. CONCLUSION

The "out-of-pocket" measure of damages is the appropriate measure for these tort claims. However, a genuine dispute of material fact exists as to how this out-of-pocket measure should be calculated, resting largely on the intent of Plaintiff in purchasing the new $3 million in life insurance. This dispute of fact makes summary judgment inappropriate and, therefore, Defendants' Motions for Partial Summary Judgment (ECF No. 51, 52) are **DENIED**.

**IT IS SO ORDERED.**

DATED: October 3, 2016

Hon. Cynthia Bashant
United States District Judge